# IN THE COURT OF APPEALS OF IOWA

No. 21-1783
Filed September 13, 2023

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**STEPHEN DEVON PHILLIPS,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A defendant appeals his conviction and sentence for robbery in the first degree. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

A jury convicted Stephen Phillips of robbery in the first degree. A judge then sentenced him to serve no more than twenty-five but at least seventeen and one-half years in prison. Phillips appeals, arguing (1) the State did not present sufficient evidence of his guilt and (2) the court abused its discretion by imposing the harshest mandatory minimum sentence allowed. Finding substantial evidence of his guilt and no abuse of discretion in sentencing, we affirm.

## I.        Facts and Prior Proceedings

Phillips accidentally recorded himself committing the crime. He was calling his acquaintance, L.Y.-F., as he approached L.Y.-F. to rob him. L.Y.-F. didn't answer. But Phillips didn't hang up—leaving L.Y.-F. a voicemail full of threats. On the recording, Phillips can be heard saying, "give me your money" and "I'm gonna tie your ass up," as well as "I'm gonna lay you down" and "I'm gonna kill you." Phillips also said: "[g]ive me that bread" and "[y]ou guys have ten seconds to give me whatever you guys have" before he began counting down. L.Y.-F., who was outside his girlfriend's house barbecuing, asked Phillips if he was serious. Pointing a handgun at L.Y.-F., Phillips answered: "I will pop your ass."

Meanwhile, L.Y.-F.'s girlfriend, B.W., and her sister, J.W., rounded up their children from the yard and took them inside to be safe. L.Y.-F. recalled that Phillips rushed onto the porch, "trying to basically bogart his way in the door with the gun, trying to point it in the door and shoot them." J.W. described a "tug of war with the door." When they finally got it closed, she recalled Phillips "started beating on the door." To deflect attention from his family, L.Y.-F. reached into his pockets and gave Phillips everything he had, including his cell phone, keys, and his EBT

(electronic benefits transfer) card. Phillips took those items and left in a Honda Accord belonging to J.W.[1]

A few hours later, police caught up with Phillips in a Motel 6 parking lot. He was still driving the Accord. As Phillips ran from police into the motel, he tripped and tossed away a handgun. That gun, which was unloaded, matched the description of the weapon used in the robbery. Inside the Accord, police found L.Y.-F.'s EBT card and phone. When police returned the phone to L.Y.-F., he used his passcode to discover the incriminating voicemail.

The State charged Phillips with robbery in the first degree, a class "B" felony, in violation of Iowa Code sections 711.1 and 711.2 (2020). A jury found him guilty as charged. At sentencing, the district court imposed the indeterminate twenty-five-year sentence required by statute and found that "the mandatory minimum of [seventy] percent" was appropriate. Phillips appeals his conviction and sentence.

## II.    Analysis

### A. Substantial Evidence of First-Degree Robbery

Phillips first contends the record did not support the jury's verdict. To prove first-degree robbery, the State had to satisfy these elements:

> 1. On or about the 15th day of May, 2020, the defendant had the specific intent to commit a theft. . . .
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
> a. Committed an assault on [L.Y.-F.] . . . OR
> b. Threatened [L.Y.-F.] with, or purposely put [L.Y.-F.] in fear of immediate physical injury, OR
> c. Threatened to commit Willful Injury . . . .

---

[1] J.W. testified that she was there to pick up her daughter, parked in the driveway, and left the keys in her car.

           3. The defendant was armed with a dangerous weapon.

In his most precise challenge, Phillips disputes element number one, the State's proof of his specific intent. He also highlights other perceived weaknesses in the prosecution's case—without specifying which element he is contesting. We review his challenge for the correction of legal error. *See State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). We defer to the jury's verdict if it is supported by substantial evidence. *Id.* Substantial evidence must be enough to convince a rational jury that Phillips is guilty beyond a reasonable doubt. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In deciding whether substantial evidence supports the verdict, we view the evidence in the light most favorable to the State, including all legitimate inferences that we can fairly deduce from the record. *Id.*

On the first element, Phillips argues that "one can speculate what [he] was intending when he showed up to [B.W.'s house] with an unloaded handgun but inferences that do no more than create speculation, suspicion, or conjecture do not create a fair inference of guilt." Phillips is right on the law, but wrong on the facts. To learn his specific intent, we can just listen to the voicemail that Philips left L.Y.-F. He told the victim point blank that he intended to take whatever valuables he had. No conjecture necessary.

Beyond disputing the proof of his intent, Phillips points to three alleged shortcomings in the State's case. One, the State offered no voice-recognition expert to verify who was speaking on the voicemail. Two, the evidence was inconsistent "on what type of weapon" he displayed that day. Three, not all witnesses reported that he banged on the door of B.W.'s house.

But those points don't undermine the strength of the State's case. First, the prosecution did not need a voice-recognition expert because L.Y.-F. verified that the recording documented his tense conversation with Phillips. Second, the record showed that Phillips brandished a pistol when he confronted L.Y.-F. The kind of pistol is unimportant. A pistol fits the definition of dangerous weapon under Iowa Code section 702.7. And "the State is not required to establish that a pistol was loaded at the time of the offense to prove its character as a dangerous weapon in a prosecution for robbery in the first degree." *State v. Nichols*, 276 N.W.2d 416, 417 (Iowa 1979). Third, the jury could believe J.W.'s testimony that Phillips beat on the door. *See State v. Hunt*, 801 N.W.2d 366, 377 (Iowa Ct. App. 2011). And even without that testimony, the State proved the elements of first-degree robbery. We affirm the verdict.

**B. Exercise of Sentencing Discretion in Setting Mandatory Minimum**

Phillips next argues the district court abused its discretion by imposing a seventy-percent mandatory minimum for his first-degree robbery sentence. We review his sentence for the correction of legal error. *See State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020). We will find error if the sentencing court abused its discretion or Phillips can show a defect in the sentencing procedure. *See id.*

Two sentencing statutes are at play. Under Iowa Code section 902.12(3), a person serving a sentence for first-degree robbery "shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 3." As cross-referenced, under section 901.11(3), the district court must decide when the robbery offender shall first become eligible for parole or

work release under the parameters of section 902.12(3). In making that decision, the court must consider "all pertinent information including the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons." Iowa Code § 901.11(3).

At Phillips's sentencing, the State urged the court to impose the highest mandatory minimum, seventy percent, pointing to (1) his recent domestic abuse assault convictions, (2) the effect of this robbery on L.Y.-F. and his family, and (3) the Iowa Risk Revised (IRR) assessment that Phillips ranked in "a high category for future violence." The prosecutor also noted that Phillips was twenty-eight years old. Defense counsel asked the court to impose the lowest mandatory minimum, fifty percent, pointing to Phillips's "relatively limited adult criminal history" and the fact that the gun was unloaded during the robbery. Counsel also argued the court should give the IRR assessment "less weight, because there is very little data on what those conclusions are based upon."

The sentencing court adopted the State's recommendation and revealed its thought process: "I am considering, Mr. Phillips, your criminal history, the nature of the offense that you committed, your age, your education, your needs, and the needs of society. I'm also considering the information contained in both the presentence report and the addendum." The court conceded, "it's true that your criminal history consists of three misdemeanors." But it noted that those misdemeanors involved domestic violence and his conduct was increasing "in severity"—including a conviction for strangulation. The court also acknowledged the defense concern with the risk assessment, but noted its statutory duty to consider that factor. The court stated: "If the risk assessment suggests that he is

in a moderate/high category for future victimization, that concerns the Court greatly." Finally, the court mentioned the victim impact:

> I think it's significant to note and remember that the victim and his family actually fled the state of Iowa because they were afraid of Mr. Phillips; and they were afraid to testify, and they were afraid to be back in the state in case something were to happen to them. So certainly there has been a great negative impact on the victim and his family.

On appeal, Phillips maintains the sentencing court did not consider "all pertinent information." For example, he notes that he has earned his GED, has two children, and denies using controlled substances. But that information was included in the presentence investigation report, which the district court expressly considered. All in all, the sentencing court did a careful analysis of the pertinent factors and reached a reasoned decision about the mandatory minimum. *See State v. Dixon*, No. 19-2007, 2021 WL 5106052, at *7 (Iowa Ct. App. Nov. 3, 2021) ("The record does not support Dixon's contention the court failed to consider the relevant factors when sentencing Dixon."). We find no abuse of discretion.

**AFFIRMED.**